IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

STATE FARM FIRE AND CASUALTY, §
COMPANY, as Subrogee of Emma §
Houston, §
§
        Plaintiff, §
§
         § Civil Action No. 3:10-CV-1922-D
VS. §
§
WHIRLPOOL CORPORATION, et al., §
§
        Defendants, §
§
VS. §
§
OPTIMA SERVICE SOLUTIONS, LLC, §
§
        Third-Party Defendant- §
        Fourth-Party Plaintiff, §
§
VS. §
§
PERRY CLARK d/b/a K&K HOME §
SERVICES f/k/a PERRY CLARK d/b/a §
CERTIFIED INSTALLATION, §
§
        Fourth-Party Defendant. §

MEMORANDUM OPINION
AND ORDER

In this insurance subrogation action arising from a residential fire following a

dishwasher installation, defendants Whirlpool Corporation ("Whirlpool") and Best Buy Co.,

Inc. ("Best Buy") move for summary judgment on the negligence and strict products liability

claims of plaintiff State Farm Fire and Casualty Company ("State Farm"). Whirlpool and

Best Buy also move for leave to amend their answers.  Following additional discovery granted under Fed. R. Civ. P. 56(d), and for the reasons that follow, the court grants in part and denies in part the motion for summary judgment.  The court grants the motion for leave to amend.

I

Many of the background facts in this case are set out in a prior memorandum opinion and order of the court.  *See State Farm Fire & Cas. Co. v. Whirlpool*, 2011 WL 3567466 (N.D. Tex. Aug. 15, 2011) (Fitzwater, C.J.).  The court will therefore recount only the additional facts and procedural history necessary to decide defendants' summary judgment motion.

State Farm brings this lawsuit as subrogee of Emma Houston ("Emma"), its insured.  In October 2004 Emma's daughter, Denise Shirlee ("Denise"), purchased from Best Buy a dishwasher manufactured by Whirlpool.  Denise paid Best Buy to install the dishwasher at Emma's residence.[1]  At the time of the sale, Best Buy had contracted with third-party defendant Optima Service Solutions, LLC ("Optima") to install certain appliances, including dishwashers.  According to Best Buy, under the terms of the contract, installation of the dishwasher was solely Optima's responsibility.  Optima, in turn, entered into a subcontract

---

[1]In recounting the factual background, the court summarizes the evidence in the light most favorable to State Farm as the summary judgment nonmovant and draws all reasonable inferences in its favor.  *See, e.g.*, *Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

agreement with fourth-party defendant Perry Clark d/b/a Certified Installations ("Clark"), under which Clark agreed to install the dishwasher for Optima.  Pursuant to the subcontract, Clark installed the dishwasher at Emma's residence in October 2004.

In June 2005 Whirlpool issued a recall notice indicating that the type of dishwasher installed at Emma's residence might have an electrical defect in the wash motor wiring. Emma contacted Whirlpool, who contracted with Bragg's Appliance Service, Inc. ("Bragg"), a local service provider, to repair the wash motor wiring.

In December 2008 a fire occurred at Emma's residence.  A State Farm representative investigated the fire and concluded that the most likely cause was the high resistance connection between the residence wiring (which was aluminum) and the dishwasher wiring (which was copper), and the lack of anti-corrosion additive on the wire nuts connecting the two types of wires.  He concluded that an installation problem, not a failure of the dishwasher itself, caused the fire.

State Farm sued Whirlpool and Best Buy, seeking to recover on claims for negligence, strict products liability, and breach of implied warranty of merchantability.[2]

Whirlpool and Best Buy moved for summary judgment on State Farm's claims.  State Farm opposed the motion, contending that it had not conducted formal discovery and that

---

[2]Prior to removal, Best Buy filed a third-party complaint against Optima, seeking to recover for contribution and indemnity.  Optima then filed a fourth-party complaint (incorrectly styled as "third-party complaint") against Bragg.  Best Buy and Whirlpool later sought and obtained leave to designate Clark as a responsible third party.  After that, Optima filed a fourth-party complaint against Clark.

summary judgment would be premature.  The court treated State Farm's opposition as a motion for a continuance under Rule 56(d), and it granted the motion as to the part of defendants' summary judgment motion addressed to State Farm's strict products liability and negligence claims.  The court granted summary judgment in favor of Best Buy, however, with respect to State Farm's claim for breach of implied warranty of merchantability.

Having completed the discovery that the court permitted, State Farm has responded to the balance of defendants' summary judgment motion, which is addressed to State Farm's negligence and strict products liability claims against Whirlpool and Best Buy, and the motion is ripe for decision.

II

When a party moves for summary judgment on a claim for which the opposing party will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the opposing party's claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party does so, the opposing party must go beyond its pleadings and designate specific facts showing there is a genuine issue for trial.  *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The opposing party's failure to produce proof as to any essential element of a claim renders all other facts immaterial.  *See*

- 4 -

*Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007 ) (Fitzwater, J.).  Summary judgment is mandatory if the opposing party fails to meet this burden.  *Little*, 37 F.3d at 1076.

## III

### A

Defendants move for summary judgment on State Farm's negligence claims.  They contend that "[b]ecause [State Farm] has not produced any evidence to establish a product defect for which Defendants are responsible, it necessarily follows that Plaintiff's negligence theory cannot be upheld."  Ds. Br. 9.  In response, State Farm has not introduced evidence that would enable a reasonable trier of fact to find that Whirlpool or Best Buy negligently designed, manufactured, assembled, failed to adequately test, distributed, sold, delivered, or failed to recall the Whirlpool dishwasher.  The court therefore grants defendants' motion and dismisses the component of State Farm's negligence claim that is dependent on establishing a product defect.

### B

In its summary judgment response, however, State Farm maintains that it also asserts that defendants "negligently installed and repaired the dishwasher."  P. Br. 6.  This contention is confirmed by State Farm's petition, which alleges that defendants "[c]arelessly and negligently failed to properly install" Emma's dishwasher and that they "[c]arelessly and negligently failed to properly repair the electrical defect in" the dishwasher.  Pet. ¶ 12.  In

support of the part of their summary judgment motion addressed to State Farm's *strict liability* claims, defendants posit that neither Whirlpool nor Best Buy installed the dishwasher.  But they do not move for summary judgment on this basis as to State Farm's negligent installation or negligent repair claim.[3]  "It is error to grant summary judgment on a ground not raised."  *Jacobs v. Tapscott*, 2006 WL 2728827, at *7 (N.D. Tex. Sept. 25, 2006) (Fitzwater, J.) (citing *John Deere Co. v. Am. Nat'l Bank, Stafford*, 809 F.2d 1190, 1192 (5th Cir. 1987)).  And to the extent defendants attempt to move for summary judgment on these claims in their reply brief, "seeking summary judgment on a ground not raised in the motion but instead raised for the first time in a reply brief is impermissible."  *Mendez v. Caterpillar, Inc.*, 2012 WL 90492, at *5 (W.D. Tex. Jan. 11, 2012) (citations omitted); *see also Johnson v. SBC Advanced Solutions, Inc.*, 2004 WL 1151650, at *6 (N.D. Tex. May 21, 2004) (Lindsay, J.) (concluding as a matter of law that defendant was not entitled to judgment on plaintiff's retaliation claim because "[a]lthough [defendant] moves for summary judgment on [plaintiff's] retaliation claim in its reply brief, the court cannot consider an argument raised for the first time in a reply brief.").

Accordingly, defendants are not entitled to summary judgment dismissing State Farm's negligent installation or negligent repair claim.

---

[3]In fact, defendants do not appear to move for summary judgment on State Farm's strict liability claims on this basis either.  They merely posit that neither Best Buy nor Whirlpool installed the dishwasher.

IV

Defendants move for summary judgment as to State Farm's strict liability claims.

A

Defendants contend that, as a non-manufacturing seller, Best Buy cannot be held strictly liable for damages allegedly caused by the Whirlpool dishwasher. They argue that because State Farm has neither alleged nor produced evidence to establish that Best Buy falls within one of the exceptions to the rule that non-manufacturing sellers cannot be held strictly liable for defective products, Best Buy is entitled to summary judgment on State Farm's strict liability claim.

Under Tex. Civ. Prac. & Rem. Code Ann. § 82.003 (West 2011), non-manufacturing sellers generally cannot be held liable for harm caused by a defective product. Under Tex. Civ. Prac. & Rem. Code Ann. § 82.003(a)(4), a non-manufacturing seller *can* be held liable for harm caused by a product if "(A) the seller exercised substantial control over the content of a warning or instruction that accompanied the product; (B) the warning or instruction was inadequate; and (C) the claimant's harm resulted from the inadequacy of the warning or instruction."

State Farm argues that Best Buy provided comprehensive instructions for the installation of the dishwasher, including general instructions to prepare for and conduct an appliance installation, and specific during-installation instructions for dishwashers. It adduces evidence that these installation instructions were drafted exclusively by Best Buy

for the installation of dishwashers.  State Farm then points to the opinion of its expert,

Goodson Engineering, that the installation of the dishwasher was improper, which led to the

fire at Emma's residence.  State Farm argues that because Best Buy did not in its various

installation instructions address the proper installation procedures for electrical connections

involving aluminum-to-copper wiring, the installation instructions were inadequate and Best

Buy is not entitled to summary judgment dismissing State Farm's strict liability claim.

B

Assuming *arguendo* that State Farm has raised genuine issues of material fact

regarding whether Best Buy exercised control over the content of the installation instructions

that accompanied the dishwasher and regarding whether the instructions were inadequate,

defendants are still entitled to summary judgment dismissing State Farm's strict liability

claim against Best Buy.  This is because State Farm has not adduced evidence that would

permit a reasonable trier of fact to find that the fire at Emma's residence resulted from any

alleged inadequacy in the instructions.

The Goodson Engineering report ("Goodson Report") states:

> The incoming house power wiring to the unit was 12 awg
> aluminum, and the wiring in the dishwasher was stranded
> copper.  A problem was found with one of the connections.
> Copper to aluminum connections require special wirenuts and
> an anticorrosion additive.   One of the wirenuts on this
> dishwasher showed signs of a high resistance connection
> because of it not having the anticorrosion additive.  The most
> likely cause of the fire was this high resistance connection
> between the house wiring and the dishwasher wiring.  This was
> an installation problem and was not a failure of the Whirlpool

dishwasher.

P. App. 227.  Although the Goodson Report opines that the fire occurred as a result of an improper wire connection, nothing in the report supports the finding that it was Best Buy's *installation instructions*, as opposed to negligence on the part of the installer, that caused the improper connection.  For example, the Goodson Report does not conclude, nor has State Farm adduced other proof, that the Clark technician relied on or even read Best Buy's installation instructions when he installed the dishwasher.  Moreover, and perhaps more important, nothing in the Goodson Report or in State Farm's other evidence suggests that the improper connection was the work of the Clark technician who initially installed the dishwasher, rather than that of the Bragg repair technician who serviced the dishwasher in 2005.  In sum, State Farm's only evidence of causation (the Goodson Report) would not enable a reasonable trier of fact to find that the improper connection was caused by Best Buy's inadequate installation instructions.  The court therefore grants defendants' motion for summary judgment regarding State Farm's strict liability claims against Best Buy.

C

Defendants also move for summary judgment dismissing State Farm's strict liability claim against Whirlpool, pointing to the absence of "evidence substantiating a manufacturing, design, and/or marketing defect regarding the dishwasher's electrical wiring."  Ds. Br. 7.  State Farm responds by citing Texas law that a lack of adequate warnings or instructions can render a product unreasonably dangerous.  State Farm posits

that because Whirlpool's instructions to the repair technician to "unplug the dishwasher or disconnect the dishwasher from the power" were inadequate and vague and led to an interpretation that the electrical connection to the dishwasher should be disconnected before any repair work was performed, there is a fact issue about whether Whirlpool's instructions and/or warnings were faulty.  P. App. 222.

Texas strict products liability claims are governed by § 402A of the Restatement (Second) of Torts.  *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 426 (Tex. 1997); *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 613 (Tex. 1996).  Under § 402A:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
> (a) the seller is engaged in the business of selling such a product, and
> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

Restatement (Second) of Torts § 402A (1965).  "A product may be unreasonably dangerous because of a defect in marketing, design, or manufacturing."  *Am. Tobacco Co.*, 951 S.W.2d at 426.  A defendant's failure to warn of a product's potential dangers when warnings are required is a type of marketing defect.  *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 382 (Tex. 1995).  The elements of a marketing defect claim under Texas law are:

> (1) a risk of harm that is inherent in the product or that may arise from the intended or reasonably anticipated use of the product; (2) the supplier of the product knows or reasonably should foresee the risk of harm at the time the product is marketed; (3) the product has a marketing defect; (4) the lack of

> warnings or instructions renders the product unreasonably
> dangerous to the ultimate user or consumer; and (5) the failure
> to warn or instruct causes the user's injury.

*Painter v. Momentum Energy Corp.*, 271 S.W.3d 388, 410 (Tex. App. 2008, pet. denied)

(citing cases).

As a preliminary matter, it is unclear whether a strict liability claim is even proper where neither the product nor the warnings and instructions that accompanied the product are unreasonably dangerous, and the plaintiff merely alleges that the unreasonably dangerous condition might have arisen as a result of a repair technician's disconnecting and reconnecting the product eight months after its installation. Nonetheless, assuming *arguendo* that such a theory of recovery is available under Texas law, State Farm has failed to produce evidence that would enable a reasonable trier of fact to find that any alleged inadequacy in the heater rework instructions caused the fire at Emma's residence.

State Farm alleges that Whirlpool's instructions to the repair technician to "unplug the dishwasher or disconnect the dishwasher from the power" could lead to an interpretation that the electrical connection to the dishwasher should be disconnected before any repair work was performed. And it adduces evidence that the repair technician removed the dishwasher from the cabinet when he performed the repair work, which, State Farm argues, could lead to the conclusion that the electrical connections may have been disturbed when the dishwasher was removed from the cabinet. State Farm adduces no evidence, however, that would enable a reasonable trier of fact to find that the Bragg repair technician was

responsible for the failure to properly install the dishwasher using wirenuts with an anti-corrosion additive or that such failure resulted from Whirlpool's instruction to "unplug the dishwasher or disconnect the dishwasher from the power."  P. App. 222.  State Farm's speculation that the electrical connections "may have been disturbed," is insufficient to support such a conclusion.[4]  *See Neely v. Khurana*, 2009 WL 1605649, at *7 (N.D. Tex. June 5, 2009) (Fitzwater, C.J.).  Because State Farm has failed to adduce evidence that would enable a reasonable trier of fact to find that Whirlpool's failure to warn or provide adequate instructions caused the fire at Emma's residence, the court grants defendants' motion for summary judgment and dismisses State Farm's strict liability claim against Whirlpool.

V

The court now turns to defendants' motion for leave to file their first amended answers.  Although the certificate of conference reflects that Optima opposes the motion, no party has filed an opposition response.

"It is settled that the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court."  *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971).  "The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Granting leave to amend, however, "is by no means automatic."  *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993) (quoting *Addington v. Farmer's*

---

[4]Moreover, to the extent State Farm argues the repair technician "deviat[ed] from the instructions supplied by Whirlpool," P. Br. 14, this argument undermines the allegation that the heater rework instructions caused the improper connection.

*Elevator Mut. Ins*. Co., 650 F.2d 663, 666 (5th Cir. Unit A July 1981)).   The court can consider factors such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment.   *Id*. (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Defendants filed their motion for leave to amend on February 16, 2012, before the March 2, 2012 deadline specified in the amended scheduling order.   When, as here, a party files a motion for leave to amend by the court-ordered deadline, there is a "presumption of timeliness."   *Poly-Am., Inc. v. Serrot Int'l Inc.*, 2002 WL 206454, at *1 (N.D. Tex. Feb. 7, 2002) (Fitzwater, J.).   Because no opposition response has been filed, there is no reason in the record that supports denying defendants' motion.

Accordingly, the motion for leave to amend is granted.   Defendants must file their amended answers within seven days of the date this memorandum opinion and order is filed.

\*     \*     \*

For the reasons explained, the court grants in part and denies in defendants' motion for summary judgment and grants defendants' motion for leave to file their first amended

answers.

**SO ORDERED.**

June 27, 2012.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE